IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

GAVORA, INC.,

        Plaintiff,

    v.

CITY OF FAIRBANKS,

        Defendant.

Case No. 4:15-cv-00015-SLG

## MEMORANDUM OF DECISION AND ORDER

### I. INTRODUCTION

This is an action alleging environmental pollution that is brought by Gavora, Inc. against the City of Fairbanks pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. §§ 9601–9675.[1] The case relates to environmental contamination at and around the Shopper's Forum Mall, located at 1255 Airport Way in Fairbanks, Alaska (the "Property"). Gavora is the current owner of the Property; it seeks an order requiring the former owner, the City of Fairbanks, to pay for 66% or more of all past and future clean-up costs.[2] The City asserts that its responsibility for the clean-up costs is far less.

Gavora, Inc. initiated this action on June 16, 2015. On September 20, 2016, the Court granted summary judgment in part to Gavora under CERCLA § 107(a).[3] The City

---

[1] Docket 1 (Complaint).

[2] Docket 53 at 22 (Plaintiff's Pretrial Brief).

[3] Docket 33 (Order re Motion for Summary Judgment and Motion to Dismiss). The Court also dismissed Gavora's state claim for contribution. Gavora was accorded an opportunity to show cause why its claim for relief against the City pursuant to CERCLA § 113(f) should not be

then filed an amended answer seeking equitable allocation of past and future response costs at the Property under CERCLA § 113(f).[4] The case proceeded to a four-day bench trial in Fairbanks, Alaska beginning on May 22, 2017.

Federal Rule of Civil Procedure 52(a) provides that "[i]n an action tried on the facts without a jury . . . the Court must find the facts specially and state its conclusions of law separately." Having considered all the testimony, the exhibits admitted into evidence, and the parties' submissions and arguments, the Court now makes the following Findings of Fact and Conclusions of Law and Equity.[5]

## II. FINDINGS OF FACT

1. In or around 1938, the City acquired the Property.

2. In 1961, the City leased a portion of the Property to Tice Electric Co. Tice or a sublessee operated a self-service laundry operation beginning in or around 1961 that operated in the Tice Center that was then located at the north end of the Property. The self-service laundry included coin-operated dry cleaning machines.

3. The self-service laundry operation continued at the Tice Center until approximately 1966.

---

dismissed.[3] Gavora did not make any showing within the prescribed time. Therefore, and for the reasons stated in the Court's prior order, Gavora's First Claim for Relief for Contribution Pursuant to CERCLA § 113(f) is dismissed with prejudice, for the reasons stated in the Court's prior order.

[4] Docket 37 (Second Amended Answer).

[5] This Memorandum of Decision does not purport to recite all of the evidence submitted and arguments made by the parties. *See* Fed R. Civ. P. 52(a) Advisory Committee Note ("[T]he judge need only make brief, definite, pertinent findings and conclusions upon the contested matters; there is no necessity for over-elaboration of detail or particularization of facts."). To the extent that any findings of fact constitute conclusions of law, they are adopted as such. To the extent that any conclusions of law constitute findings of fact, they are adopted as such.

Case No. 4:15-cv-00015-SLG, *Gavora v. City of Fairbanks*
Memorandum of Decision and Order
Page 2 of 20
Case 4:15-cv-00015-SLG   Document 66   Filed 07/25/17   Page 2 of 20

4. A laundry operation that included dry cleaning then began shortly thereafter in a former annex building that was then located just south of the former Tice Center location. That operation was in existence when Gavora acquired the master lease in 1976. Gavora had previously acquired all of the shares of the prior master leaseholder, B & B Company, in 1974. (Ex. S).

5. Gavora's lease with the City was valid until 2016. The lease accorded Gavora a contractual right to purchase the Property from the City at fair market value at any time during the term of the lease. (Ex. Q at 4).

6. Beginning in 1976, Gavora subleased part of the Annex building at the southern end of the Property to dry cleaners that operated there until approximately 2001 (or perhaps 2002). (Ex. L). There have been no dry cleaning operations on the Property since that time.

7. At no time did either the City or Gavora conduct dry cleaning operations on the Property. The City owned its utilities between 1961 and 1997 and received property tax revenue for the Property. It also received rent from Gavora. Gavora, in turn, received rent from the dry cleaning operators.

8. PCE (tetrachloroethylene) and TCE (trichloroethylene) are chlorinated solvents and environmental contaminants.

9. Dry cleaning operations may cause PCE and TCE contamination in the groundwater and soil. There is PCE and TCE contamination at the Property, which the Court finds is due to the dry cleaning operations that took place there from 1961 until approximately 2001. A substantial majority of the contamination is due to the dry cleaning operations that were in the Annex from 1976 until 2001. The percentage of the overall

Case No. 4:15-cv-00015-SLG, *Gavora v. City of Fairbanks*
Memorandum of Decision and Order
Page 3 of 20
Case 4:15-cv-00015-SLG   Document 66   Filed 07/25/17   Page 3 of 20

contamination that was caused by the Annex operation is not capable of precise quantification. Based on the evidence presented at trial, the Court estimates that between 80% and 90% of the total on-site PCE and TCE contamination was from operations at the Annex from 1976 to approximately 2001.

10. In 1992, PCE and TCE were discovered in the soil and groundwater at Fairview Manor, a large commercial property located north of the Property on the other side of Airport Way. Fairview Manor was owned by the City at that time. (Ex. 6 at 4).

11. The direction of the groundwater flow at the Property is from southeast to northwest.

12. Beginning in the 1990s, the City actively worked with a consultant and the Alaska Department of Environmental Conservation (ADEC) to address the contamination at Fairview Manor. Patrick Smith, the Development Manager for the City of Fairbanks, and Larry Crouder, the City Engineer, were both active participants in that process. To the extent Mr. Smith testified he was not actively involved in that process, the Court found that testimony not credible.

13. In 1999, monitoring wells were installed near the southern edge of the Fairview Manor property, just across the street and downgradient from the Property. The wells demonstrated that the contaminants at the Fairview Manor "originate from an upgradient, off-site source(s)." (Ex. 6 at 4). The City was informed of that fact at that time.

14. The Property is an upgradient off-site location relative to Fairview Manor. At trial, Mr. Smith's testified that he did not know this fact until recently. The Court finds this testimony not credible, given Mr. Smith's long career with the City of Fairbanks, first as the right-of-way manager, and then as the property and development manager.

Case No. 4:15-cv-00015-SLG, *Gavora v. City of Fairbanks*
Memorandum of Decision and Order
Page 4 of 20
Case 4:15-cv-00015-SLG   Document 66   Filed 07/25/17   Page 4 of 20

Knowledge of underground water movement would appear to be essential in those jobs, particularly with the Chena River flowing directly through Fairbanks, to the north of Fairview Manor.

15. Based upon the Court's consideration of all the evidence presented at trial, the Court finds that in 1999, Pat Smith knew, or at the very least should have known, that it was likely there was PCE and TCE contamination at the Shopper's Forum Property as a result of the longstanding dry cleaning operations at that site and Mr. Smith's knowledge of the PCE and TCE contamination found downgradient to the Property at Fairview Manor.

16. On October 13, 2000, ADEC added the Shopper's Forum Property to its database of contaminated sites. An undated entry in ADEC's file indicated that "assessment and historical review indicate releases have occurred from at least two historic drycleaners that have operated on the property." It also indicated that samples from the Annex at the south end of the Property "detected high concentrations of PCE and TCE in soil and groundwater." And "[t]here appears to have been a smaller release from the former drycleaner located along the north end of the property." (Ex. 13 at 1).

17. In a letter dated March 7, 2001 from ADEC to the City's Fairview Manor consultant, which was copied to City Engineer Larry Crouder, ADEC agreed with the City's consultant that the source of the PCE and TCE contamination at Fairview Manor was from an off-site contaminant source. The letter specifically referenced "the location of a dry cleaning company up-gradient" as a reason for concurring in the City consultant's assessment. (Ex. 8 at 2).

Case No. 4:15-cv-00015-SLG, *Gavora v. City of Fairbanks*
Memorandum of Decision and Order
Page 5 of 20
Case 4:15-cv-00015-SLG   Document 66   Filed 07/25/17   Page 5 of 20

18. A letter dated April 19, 2001 from the City's Fairview Manor consultant addressed to the City of Fairbanks, to the attention of Patrick Smith, indicated that Mr. Smith had discussed with the City's consultant on that project that the City might choose not to make public the fact that the City knew that there was PCE/TCE contamination in the area, citing, among other reasons "contractual circumstances and/or concerns." (Ex. 9 at 2). The letter specifically confirmed that there was contamination to the southwest of the Fairview Manor property. The consultant recommended that the "City of Fairbanks should ask to be kept routinely informed of any contamination/remediation projects" regarding "suspected offsite sources" adjacent to the Fairview Manor property. (Ex. 9 at 3).

19. Later that same year, in September 2001, Gavora indicated its intent to exercise its option to purchase the Property from the City. (Ex. 10). Mr. Smith prepared a memorandum to the Mayor regarding the proposal, in which he opined that the City had been subsidizing Gavora because the rent paid by Gavora under the lease was substantially below fair market rent.

20. In a letter dated March 29, 2002 from Gavora to the City's Mayor, Mr. Paul Gavora wrote about the upcoming commercial appraisal that the parties had agreed would be used to value the Property for the intended sale. In that letter, Mr. Gavora noted that "[t]he industry standard for commercial appraisals includes . . . environmental concerns." He stressed that "the instructions provided to MAI appraiser, Mr. King, must be consistent with industry standards and mutually agreed upon." (Ex. Z at 2).

21. Shortly thereafter, the City-retained appraiser valued the Property. Patrick Smith, on behalf of the City of Fairbanks, wrote to the appraiser and directed that "[t]he

Case No. 4:15-cv-00015-SLG, *Gavora v. City of Fairbanks*
Memorandum of Decision and Order
Page 6 of 20
Case 4:15-cv-00015-SLG   Document 66   Filed 07/25/17   Page 6 of 20

appraisal shall be performed under the Uniform Standards of Appraisal Practice" (USPAP). (Ex. AB).

22. In approximately April 2002, Mr. Smith met with the appraiser for approximately half an hour to discuss the Property, but at no time did he advise the appraiser that there was likely environmental contamination at the Property from the dry cleaning operations. The appraiser indicated that he had had "in-depth discussions of the property and valuation issues with Mr. Pat Smith of the City of Fairbanks." (Ex. 11 at 11). The appraisal included "a specific assumption" that there was no environmental contamination on the Property. (Ex. 11 at 13). The USPAP recognizes that appraisers are not experts in detecting environmental contamination and notes that an appraiser "becomes aware of contamination through disclosure by the client." If such a disclosure is made, the USPAP requires an appraiser to identify that fact in the appraisal. (Docket 64-1 at 164–65).

23. In June 2002, ADEC had prepared a Site Characterization Plan for Fairview Manor regarding PCE and TCE as a follow up to the detection of these solvents at that property. The report concluded that the former and current dry cleaners at the Property was one potential source for the contamination at Fairview Manor. It also identified a former service station located to the east of Fairview Manor and the sanitary sewer lines as potential sources. (Ex. 12 at 15).

24. The Real Estate Purchase Agreement for the Property between the City and Gavora was signed on May 14, 2002. The City cooperated with Gavora to expedite the closing, as a result of which Gavora was able to defer $157,000 in taxes. (Ex. 28).

Case No. 4:15-cv-00015-SLG, *Gavora v. City of Fairbanks*
Memorandum of Decision and Order
Page 7 of 20
Case 4:15-cv-00015-SLG   Document 66   Filed 07/25/17   Page 7 of 20

25. The Real Estate Purchase Agreement specified that Gavora had done "due diligence" prior to the purchase, and had "inspected the property, [was] familiar with its condition, and accept[ed] same 'as is, where is'." (Ex. AM at 2).

26. The City did not disclose to Gavora the likelihood of environmental contamination in the form of PCEs and TCEs on the Property prior to the sale, although the City knew, or at least should have known, of that likelihood.

27. There was no evidence presented that Gavora had the Property tested for environmental contamination prior to its purchase. It is unclear why Gavora did not take steps to insure that the Property did not have environmental contamination prior to purchasing it.

28. ADEC sent out Potentially Responsible Party (PRP) letters to Gavora, the City, and Tice Electric on June 5, 2009. (Ex. AN). An internal ADEC email written at that time stated "[s]ince we have not linked the contamination to dry-cleaning operations yet, I have not tracked down any of the laundromat operators." (Ex. 15).

29. City Engineer Jackson Fox responded to ADEC's PRP letter on behalf of the City of Fairbanks. He advised ADEC that "Pat Smith [] and I are reviewing all City records related [to] the subject property" in order to respond to ADEC's inquiry as to information regarding contamination at the Property. (Ex. AO). A few weeks later, Mr. Fox advised ADEC that "[n]o records were found regarding potential or existing contamination of the subject property." (Ex. AP at 2). The City did not provide ADEC with any of the documents discussed above regarding contamination at Fairview Manor from an upgradient source.

Case No. 4:15-cv-00015-SLG, *Gavora v. City of Fairbanks*
Memorandum of Decision and Order
Page 8 of 20
Case 4:15-cv-00015-SLG   Document 66   Filed 07/25/17   Page 8 of 20

30. Gavora retained a consultant to prepare a Site Characterization Report of the Property in August 2010. The consultant found high concentrations of PCE and TCE at levels above the DEC cleanup levels throughout the Property in both the groundwater and in the soil.

31. Gavora did not prove by a preponderance of the evidence that the sewer lines contributed to the Property's contamination.

32. As of March 31, 2017, Gavora has paid Shannon and Wilson the sum of $112,895.31 for remedial work at the Property. Approximately 70% of that cost was for cleanup work at the Annex; the remaining 30% was for the site as a whole. Other expenses have been incurred by Gavora to the State of Alaska and to certain contractors and Gavora employees for remedial work. (Ex. 26). Excluding legal expenses, Gavora has incurred $174,081.95 in response costs. (Ex. 26 at 5–6).[6]

33. The City of Fairbank's expert, Edmond Packee, opined that there was insufficient information to determine whether the north end of the Property was a separate source of contamination, or if the contamination in that area is a downgradient extension from the Annex. The Court finds it more likely than not that the north end of the Property and the dry cleaning operations that took place there in the 1960's and 1970's is another source of the contamination, but of a far lesser magnitude than the Annex. (Ex. AZ).

---

[6] Exhibit 26 sets out Gavora's expenses. These include total expenses of $248,031.45, *see* Ex. 26 at 6, and total legal expenses of $73,949.50, *see* Ex. 26 at 5. At trial there was a reference to legal fees as totaling $72,569.00, *see* Ex. 26 at 4, but that total omits the three invoices documented at the top of the next page.

Case No. 4:15-cv-00015-SLG, *Gavora v. City of Fairbanks*
Memorandum of Decision and Order
Page 9 of 20
Case 4:15-cv-00015-SLG   Document 66   Filed 07/25/17   Page 9 of 20

## III. CONCLUSIONS OF LAW AND EQUITY

*A. Defendant's Section 107(a) Liability*

1. The Comprehensive Environmental Response, Compensation, and Liability Act of 1980[7] ("CERCLA") was enacted "in response to the serious environmental and health risks posed by industrial pollution."[8] Through a complex statutory framework, CERCLA "was intended to promote the timely cleanup of hazardous waste sites, ensure that polluters were held responsible for cleanup efforts, and encourage settlement through specified contribution protection."[9] It imposes strict liability on potentially responsible parties ("PRP") for the cleanup of an environmental hazard, "even if the person did not contribute to the contamination."[10]

2. Pursuant to Section 107(a) of CERCLA, a private party may recover cleanup costs from a party that bears some responsibility for the release of hazardous materials at the site.[11] The Court previously held, at the summary judgment stage, that the City is jointly and severally liable for the recoverable response costs pursuant to that

---

[7] Pub. L. No. 96-510, 94 Stat. 2767 (1980), *as amended*, 42 U.S.C. § 9601 *et seq.*

[8] *Burlington N. & Santa Fe Ry. Co. v. United States*, 556 U.S. 599, 602 (2009).

[9] *Chubb Custom Ins. Co. v. Space Systems/Loral, Inc.*, 710 F.3d 946, 956 (9th Cir. 2013) (citing *Burlington*, 556 U.S. at 602).

[10] *Chubb Custom Ins.*, 710 F.3d at 957 (citing *United States v. Atl. Research Corp.*, 551 U.S. 128, 136 (2007)).

[11] *See* 42 U.S.C. § 9607.

Case No. 4:15-cv-00015-SLG, *Gavora v. City of Fairbanks*
Memorandum of Decision and Order
Page 10 of 20
Case 4:15-cv-00015-SLG   Document 66   Filed 07/25/17   Page 10 of 20

section.[12]  Gavora's legal fees are not a recoverable expense.[13]  All of the other costs incurred as set forth in Exhibit 26 are recoverable, as the Court finds they are necessary response costs consistent with the National Contingency Plan and have been adequately accounted for.[14]

3.      Liability under Section 107(a) is presumptively joint and several, but a "defendant may avoid joint and several liability by establishing that it caused only a divisible portion of the harm—for example, it contributed only a specific part of the hazardous substances that spilled."[15]  A party "seeking to avoid joint and several liability bear[s] the burden of proving that a reasonable basis for apportionment exists."[16]  At the summary judgment stage, the Court held that the City had presented "no evidence that the harm was divisible" and that it was thus joint and severally liable.[17]  But the City subsequently, and without objection, amended its Answer to assert a defense of apportionment.[18]  Both parties presented evidence and argument on the matter at trial.

---

[12] *See* Docket 33 at 16; *see also* Docket 33 at 10 (citing *Carson Harbor Vill., Ltd. v. Unocal Corp.*, 270 F.3d 863, 870–71 (9th Cir. 2001) (en banc)) (setting forth elements for establishing liability).

[13] *Key Tronic Corp. v. United States*, 511 U.S. 809, 819 (1994).

[14] *Boeing Co. v. Cascade Corp.*, 207 F.3d 1177, 1186 (9th Cir. 2000).

[15] *Carson Harbor*, 270 F.3d at 871.

[16] *Burlington*, 556 U.S. at 614.

[17] *See* Docket 33 at 16.

[18] *See* Docket 37 (Second Amended Answer) at 7.

Case No. 4:15-cv-00015-SLG, *Gavora v. City of Fairbanks*
Memorandum of Decision and Order
Page 11 of 20
Case 4:15-cv-00015-SLG   Document 66   Filed 07/25/17   Page 11 of 20

4. In determining whether the harm is capable of apportionment, a court does not rely on equitable considerations.[19] Rather, apportionment (sometimes called divisibility) is a "causation-based" analysis that assigns to each party only that portion of the harm each individually caused, using the Restatement (Second) of Torts as guidance.[20] Apportionment need not be precise, so long as there exists a reasonable basis for it, such as "volumetric, chronological, or other types of evidence, including appropriate geographic considerations."[21] Thus, in *Burlington*, the Supreme Court upheld an apportionment of 9% liability to a landowner who owned only 19% of the parcel where the polluting activities occurred for 45% of the period when polluting activities occurred.[22] The Supreme Court affirmed the district court's apportionment analysis, in which it had multiplied the various percentages.[23]

5. In this case, there is a single parcel at issue, and the dispute is between the current landowner and the prior landowner. Neither party itself operated a dry cleaning

---

[19] *Burlington*, 556 U.S. at 615 n.9.

[20] *Burlington*, 556 U.S. at 614 (citing Restatement (Second) of Torts § 443A)

[21] *See Burlington*, 556 U.S. at 617–18 (citation omitted). The Restatement offers the following example: "[W]here the cattle of two or more owners trespass upon the plaintiff's land and destroy his crop, the aggregate harm is a lost crop, but it may nevertheless be apportioned among the owners of the cattle, on the basis of the number owned by each, and the reasonable assumption that the respective harm done is proportionate to that number." Restatement (Second) of Torts § 443A cmt. d.

[22] *Burlington*, 556 U.S. at 616.

[23] *Burlington*, 556 U.S. at 618–19. The district court had included a factor allocating two-thirds of the pollution to two chemicals used on the landowner's portion of the polluted site, but then made a 50% adjustment to account for any measurement error. The Supreme Court suggested that the two-thirds adjustment might have been inadequately supported by the record, but held that any such error was harmless because the 50% additional adjustment resulted in an acceptable apportionment. *Id.* at 618.

Case No. 4:15-cv-00015-SLG, *Gavora v. City of Fairbanks*
Memorandum of Decision and Order
Page 12 of 20
Case 4:15-cv-00015-SLG Document 66 Filed 07/25/17 Page 12 of 20

operation. Percentage of land ownership therefore does not provide a sufficient basis for apportionment.

6.     The environmental contamination at issue in this case was ongoing from approximately 1961 through 2001, when dry cleaners were operating on the Property. The City owned the Property for this entire period, and Gavora was the master leaseholder for approximately 65% of that period (from roughly 1975 through 2001). As the Court found above, a substantial majority of the contamination was caused by the Annex operations from 1975 through 2001 when the City owned the Property and Gavora was the master leaseholder.

7.     A causation-based analysis to apportion responsibility is inappropriate in this case, where neither party was directly responsible for the contamination. The Court specifically rejects the City's position that it should not bear any responsibility for the contamination at the Annex from 1975 to 2001. The City owned the Property throughout that time. Shifting all responsibility to Gavora solely because it was the master leaseholder during that time is unwarranted, particularly given that no evidence was presented that Gavora knew of the contamination or potential for contamination by its subtenants prior to its receipt of the PRP letter from ADEC in 2009.[24]

8.     The City has not met its burden of proving that a reasonable basis for apportionment exists. The Court therefore finds that the parties are jointly and severally liable for the total amount of the recoverable response costs.

---

[24] *See infra*, note 34.

Case No. 4:15-cv-00015-SLG, *Gavora v. City of Fairbanks*
Memorandum of Decision and Order
Page 13 of 20
Case 4:15-cv-00015-SLG   Document 66   Filed 07/25/17   Page 13 of 20

### B. Contribution Pursuant to Section 113(f)

9. Section 113(f)(1) of CERCLA provides that "[a]ny person may seek contribution from any other person who is liable or potentially liable under [§ 107(a)] during or following any civil action under [§ 106] or under [§ 107]."[25] Contribution, also known as equitable allocation, is available even when apportionment of liability is not,[26] so that a defendant in a § 107(a) action "could blunt any inequitable distribution of costs by filing a § 113(f) counterclaim."[27] As noted above, the City filed such a counterclaim in its Second Amended Answer. In ruling on such a claim, a court relies on "such equitable factors as the court determines are appropriate."[28]

10. The Court finds that Gavora, which operated the Property as the master leaseholder when discharges occurred, is a responsible party under CERCLA.[29]

11. The Court has "discretion to decide what factors ought to be considered," but the Ninth Circuit has endorsed the use of the so-called Gore factors.[30] The Gore factors include: (1) the ability of the parties to demonstrate that their contribution to a discharge, release, or disposal of a hazardous waste can be distinguished; (2) the amount

---

[25] 42 U.S.C. § 9614(f)(1).

[26] *Burlington*, 556 U.S. at 615 n.9.

[27] *United States v. Atl. Research Corp.*, 551 U.S. 128, 140 (2007).

[28] 42 U.S.C. § 9613(f)(1).

[29] *See* 42 U.S.C. § 9607(a)(1); *see also Carson Harbor Vill., Ltd. v. Unocal Corp.*, 270 F.3d 863, 870–71 (9th Cir. 2001) (en banc)).

[30] *Boeing Co. v. Cascade Corp.*, 207 F.3d 1177, 1187 (9th Cir. 2000) ("Some courts use what are called 'Gore factors'" but "[t]he trial court is . . . not limited to the Gore factors."). The Gore factors were "named after a failed attempt to amend CERCLA," and would have listed the Gore factors in the statute as the basis for allocating liability. *Id.*

Case No. 4:15-cv-00015-SLG, *Gavora v. City of Fairbanks*
Memorandum of Decision and Order
Page 14 of 20
Case 4:15-cv-00015-SLG   Document 66   Filed 07/25/17   Page 14 of 20

of the hazardous waste involved; (3) the degree of toxicity of the hazardous waste involved; (4) the degree of involvement by the parties in the generation, transportation, treatment, storage, or disposal of the hazardous waste; (5) the degree of care exercised by the parties with respect to the hazardous waste concerned, taking into account the characteristics of such hazardous waste; and (6) the degree of cooperation by the parties with Federal, State, or local officials to prevent any harm to the public health or the environment.[31] But "as is typical with multi-factor tests, . . . [m]ost of the Gore factors, unfortunately, fail to assist in this case."[32] This is particularly so in this case, where neither of the parties before the Court was actively engaged in the polluting activities. A court may also consider other equitable factors, such as "the financial resources of the liable parties; the extent of the benefit that the parties received from the hazardous waste disposal practices; the extent of the parties' knowledge and awareness of the environmental contamination of the site; the efforts made, if any, to prevent environmental harm and the efforts made to settle the case."[33] The Court now addresses each of these factors in turn.

12. *The ability of the parties to demonstrate that their contribution to a discharge, release, or disposal of a hazardous waste can be distinguished*. As noted above, neither party was able to demonstrate with any degree of precision that their contribution to the discharge of the hazardous waste can be distinguished. The entirety

---

[31] *See Kerr–McGee Chem. Corp. v. Lefton Iron & Metal Co.*, 14 F.3d 321, 326 (7th Cir. 1994) (setting out factors).

[32] *Boeing*, 207 F.3d at 1187 (citation omitted).

[33] *United States v. Davis*, 31 F. Supp. 2d 45, 63 (D.R.I. 1998), *aff'd*, 261 F.3d 1 (1st Cir. 2001).

Case No. 4:15-cv-00015-SLG, *Gavora v. City of Fairbanks*
Memorandum of Decision and Order
Page 15 of 20
Case 4:15-cv-00015-SLG   Document 66   Filed 07/25/17   Page 15 of 20

of the contamination here is an "orphan share," in that the contamination was caused by non-parties to this action who are unknown, insolvent, defunct, or dead.[34]

13. *The amount of the hazardous waste involved.* The hazardous waste consists of concentrations of PCEs and TCEs at levels above ADEC soil and groundwater cleanup levels which extend off the Property to the north.

13. *The degree of toxicity of the hazardous waste involved.* The degree of toxicity was most pronounced within the Annex, particularly inside the restaurant now located there. This factor appears most relevant when there are two types of discharges by two distinct actors, and one discharge is more toxic than the other. This factor is therefore only marginally helpful in this case, if at all.

15. *The degree of involvement by the parties in the generation, transportation, treatment, storage, or disposal of the hazardous waste.* Neither party was directly involved in the generation, transportation, treatment, storage, or disposal of the hazardous waste.

16. *The degree of care exercised by the parties with respect to the hazardous waste concerned, taking into account the characteristics of such hazardous waste.* The Court has found that the City was aware of, or at least should have been aware of, the likelihood of hazardous waste at the Property as early as 1999, but did not inform Gavora

---

[34] As the Ninth Circuit has explained, "[u]nder § 113(f)(1), the cost of orphan shares is distributed equitably among all PRPs, just as cleanup costs are." *Pinal Creek Grp. v. Newmont Min. Corp.*, 118 F.3d 1298, 1303 (9th Cir. 1997), *overruled on other grounds by Kotrous v. Goss-Jewett Co.*, 523 F.3d 924, 933 (9th Cir. 2008); *cf. Bedford Affiliates v. Sills*, 156 F.3d 416, 430 (2d Cir. 1998) (affirming district court's assignment of 5% liability to the property owner and 5% contingent liability to master leaseholder when neither was directly responsible for discharge), *overruled on other grounds by W.R. Grace & Co.-Conn. v. Zotos Int'l, Inc.*, 559 F.3d 85, 90 (2d Cir. 2009).

Case No. 4:15-cv-00015-SLG, *Gavora v. City of Fairbanks*
Memorandum of Decision and Order
Page 16 of 20
Case 4:15-cv-00015-SLG   Document 66   Filed 07/25/17   Page 16 of 20

of that likelihood prior to Gavora's purchase of the Property. This evidences a low degree of care exercised by the City, particularly in relation to the health and safety of persons working inside the Annex. Gavora, for its part, did not undertake any environmental testing of the Property at the time of purchase, but rather bought the Property "as is." However, since receiving notice of the hazardous waste in 2009, Gavora has taken considerable steps, albeit not with all due haste, to remedy the impact of the hazardous waste.

17. *The degree of cooperation by the parties with Federal, State, or local officials to prevent any harm to the public health or the environment.* Gavora has demonstrated that it has cooperated with the State upon learning of the contamination, particularly in acting to prevent harm to people within the Annex. For its part, the City promptly communicated with ADEC after receiving the PRP letter, but it failed to provide ADEC with the information it had acquired when working on Fairview Manor about the likelihood of contamination originating at the Property.

18. *The financial resources of the liable parties.* Both parties have sufficient financial resources to remediate.

19. *The extent of the benefit that the parties received from the hazardous waste disposal practices.* Each party economically benefited from the dry cleaning operations on the Property, as detailed in the Findings of Fact, above. Going forward, Gavora, as the present landowner, will receive the greatest benefit from the completion of remediation efforts.[35]

---

[35] *Cf. Yankee Gas Servs. Co. v. UGI Utils., Inc.*, 852 F. Supp. 2d 229, 248–49 (D. Conn. 2012) (assigning liability to a landowner not directly involved in polluting activities because that owner

Case No. 4:15-cv-00015-SLG, *Gavora v. City of Fairbanks*
Memorandum of Decision and Order
Page 17 of 20
Case 4:15-cv-00015-SLG   Document 66   Filed 07/25/17   Page 17 of 20

20. *The extent of the parties' knowledge and awareness of the environmental contamination of the site.* The City was aware of, or should have been aware of, the contamination as early as 1999. The City disregarded the health and safety of its citizens and visitors that frequented its commercial property by failing to take appropriate action to alert Gavora and others to the likely contamination at the Property. Gavora appears to have first learned of the contamination in approximately 2009 upon notice from ADEC.

21. *The efforts made, if any, to prevent environmental harm.* Neither party made efforts to prevent the environmental harm while the dry cleaners were operating, although the City should have done so upon learning of the contamination, presumably in 1999. The Court does not find that the paving of the Property in 1975 by Gavora prevented environmental harm, nor was there any evidence that Gavora intended for the paving to prevent such harm.

22. *The efforts made to settle the case.* The parties unsuccessfully attempted a mediation.

23. Based on these equitable considerations, the Court gives the greatest weight to (1) the fact that the City learned, or should have learned, of the contamination no later than 1999, yet failed to inform Gavora or others of that fact either at that time, or at the time of the sale to Gavora in 2002, or at any other time, thereby potentially endangering the health of Fairbanks' citizens and visitors; (2) Gavora has made substantial efforts to remediate upon learning of the contamination, whereas the City has not yet paid anything toward the remediation; (3) it is inequitable to hold Gavora

---

"stands to benefit from cleanup at the site").

Case No. 4:15-cv-00015-SLG, *Gavora v. City of Fairbanks*
Memorandum of Decision and Order
Page 18 of 20
Case 4:15-cv-00015-SLG   Document 66   Filed 07/25/17   Page 18 of 20

responsible for the contamination prior to approximately 1975, but the Court cannot effectively apportion the contamination; and (4) the fact that Gavora, as the current owner, obtains a far greater benefit from the remediation of the Property than the City.

24. Based on the foregoing, the Court finds that it is equitable to allocate to the City responsibility for ***55%*** of the recoverable response costs, or $95,745, and to allocate to Gavora responsibility for ***45%*** of the recoverable response costs, the remaining $78,337.

    *C.    Declaratory Relief*

25. The Court also holds that, pursuant to CERCLA § 113(g)(2), Gavora is entitled to declaratory relief as to the City's liability under § 107(a) for future response costs. CERCLA provides that in any § 107(a) action, "the court shall enter a declaratory judgment on liability for response costs . . . ."[36] The Ninth Circuit has held that "if a plaintiff successfully establishes liability for the response costs sought in the initial cost-recovery action, it is entitled to a declaratory judgment on present liability that will be binding on future cost-recovery actions."[37] To be recoverable, however, such future costs must be both necessary and consistent with the National Contingency Plan.[38]

26. The Court finds that declaratory relief is appropriate as to the allocation of future recoverable response costs and applies the same equitable considerations to

---

[36] 42 U.S.C. § 9613(g)(2).

[37] *City of Colton v. Am. Promotional Events, Inc.-West*, 614 F.3d 998, 1007 (9th Cir. 2010).

[38] *See United Alloys, Inc. v. Baker*, 797 F. Supp. 2d 974, 1004 (C.D. Cal. 2011). *See also* Docket 33 at 12–15 (discussing National Contingency Plan).

Case No. 4:15-cv-00015-SLG, *Gavora v. City of Fairbanks*
Memorandum of Decision and Order
Page 19 of 20
Case 4:15-cv-00015-SLG   Document 66   Filed 07/25/17   Page 19 of 20

determine the appropriate allocation. Thus, the City is responsible for **_55%_** of the future response costs and Gavora is responsible for **_45%_** of such future response costs.

IV. **ORDER**

For the foregoing reasons, IT IS ORDERED as follows:

- The City and Gavora are jointly and severally liable for the contamination on the Property pursuant to Section 107(a) of CERCLA.

- The City shall be responsible for **55%** of all recoverable response costs and Gavora shall be responsible for **45%** of all recoverable response costs pursuant to Section 113(f) of CERCLA.

- Gavora has incurred NCP-compliant response costs in the amount of $174,081.95. As to this amount, the City shall pay Gavora $95,745.

- Declaratory relief shall be entered as to the apportionment of liability and allocation of costs for future NCP-compliant response costs. With respect to these future costs, the City shall be responsible for **55%** and Gavora shall be responsible for **45%**.

- The Court retains jurisdiction to address the recoverability of future response costs that cannot be resolved by the parties.

The Clerk of Court shall enter a judgment accordingly.

DATED this 25th day of July, 2017 at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

Case No. 4:15-cv-00015-SLG, *Gavora v. City of Fairbanks*
Memorandum of Decision and Order
Page 20 of 20
Case 4:15-cv-00015-SLG   Document 66   Filed 07/25/17   Page 20 of 20